# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| MARY WALKER, | : | Case No. 1:08-cv-450 |
| | : | |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED.**

This is a Social Security disability benefits appeal. At issue in this appeal is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and, therefore, unentitled to a period of disability and disability income benefits. (*See* Administrative Transcript ("Tr.") 25).

## I. FACTS AND PROCEDURAL HISTORY

On August 12, 2004, Plaintiff, Mary Walker, filed an application for disability insurance benefits alleging a disability onset date of January 1, 2002, as a result of depression, anxiety and panic disorder. (Tr. 64-66). Plaintiff claims her conditions render her disabled, entitling her to a period of disability and disability insurance benefits.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Plaintiff's claims were initially denied at the state agency level on November 22, 2004. (Tr. 29). On January 5, 2005, Plaintiff requested reconsideration of the initial denial of her claims. (Tr. 32). On April 8, 2005, Plaintiff's claims were again denied on reconsideration. (Tr. 34). Thereafter, on May 3, 2005, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 36).

A hearing was held before the ALJ on May 4, 2007, at which time Plaintiff appeared with counsel and testified. (*See* Tr. 358-389). To support her claims, Plaintiff submitted a number of medical records from her physicians for the ALJ's review, notably records from Dr. Chetna Mital, Dr. Kenneth Tepe, Dr. Peter Boxer, and Dr. Julie Renner.

Included among the records submitted to the ALJ was a residual functional capacity ("RFC") questionnaire completed by Dr. Renner. (Tr. 285-286). Dr. Renner concluded that Plaintiff was seriously limited in her abilities to: maintain attention for two hours; sustain an ordinary routine without special supervision; work in coordination or in proximity to others without being unduly distracted; perform at a consistent pace without unreasonably numerous and/or lengthy breaks; carry out detailed instructions; travel in unfamilar places; and use public transportation. (Tr. 285-286).

Dr. Renner also concluded that Plaintiff was completely unable to: complete a normal workday and/or workweek without any interruption from her condition; understand and remember detailed instructions; and to handle any work-related stress. (Tr. 285-286). Finally, Dr. Renner concluded that Plaintiff would be required to miss up

to four days per month as a result of her impairments. (Tr. 287).

Also presented for the ALJ's review was a report authored by David Chiappone, Ph.D., a clinical psychologist, who examined Plaintiff on October 29, 2004, at the request of Defendant. (Tr. 245-248). Dr. Chiappone concluded that Plaintiff:

> can understand simple one and two-step job instructions. She is mildly impaired in her ability to remember such tasks . . . She is mildly impaired in her ability to maintain concentration and attention . . . She can relate to co-workers, supervisors and the public . . . She is moderately impaired in her ability to carry out and persist over time due to anxiety. She has moderately reduced stress tolerance. She's capable of managing her funds. GAF for symptoms would be 51, while functional level is 61 as she is capable of doing basic tasks.

(Tr. 248). Dr. Chiappone suggested diagnoses of generalized anxiety disorder and panic disorder with agoraphobia. (Tr. 248).

A vocational expert, Dr. Stephanie Barnes, was also present and testified at the hearing on May 4, 2007. (Tr. 383-387). In response to a hypothetical question setting forth the conclusions of Dr. Chiappone, as set forth in his report, Dr. Barnes testified that there were a number of jobs in the regional and national economy that Plaintiff could perform. (Tr. 383-387).

On August 28, 2007, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 10-25). That decision became Defendant's final determination upon denial of review by the Appeals Council on May 23, 2008. (Tr. 5-7).

The ALJ's "Findings," which represent the rationale of his decision, were as

follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since January 1, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: depression; anxiety/panic disorder; and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to perform only simple, routine, repetitive tasks. She can understand, remember, and carry out only short and simple instructions, and cannot work at a rapid production-rate pace. The claimant can make only simple work-related decisions, and her job should not require more than ordinary and routine changes in work setting or duties. The claimant cannot interact with the general public and can interact with coworkers and supervisors only occasionally. The claimant can never climb ladders/ropes/scaffolds, work at unprotected heights, or work around hazardous machinery.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 25, 1976 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-25).

The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act and, therefore, not entitled to a period of disability and disability insurance benefits. (Tr. 25).

On appeal, Plaintiff argues that the ALJ erred: (1) in determining Plaintiff's RFC; and (2) in finding Plaintiff non-compliant with her treatment.

## II. ANALYSIS

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).

If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted).

### A. First Assignment of Error

In her first assignment of error, Plaintiff contends that the ALJ erred in determining her RFC. Specifically, Plaintiff presents two arguments in this assignment of error: (1) that the ALJ erred in determining that Dr. Julie Renner was not a treating physician; and (2) that the ALJ erred in determining that notes of Plaintiff's treatments did not support Dr. Renner's opinion about Plaintiff's RFC.

*1.     Treating Physician Analysis*

The ALJ determined that Dr. Renner was not a treating psychiatrist because she "saw claimant only three times over a 7 month period." (Tr. 23). The ALJ further noted that one of Plaintiff's three appointments with Dr. Renner was made simply to get a prescription refill, and that another "appointment was made primarily to have a disability form completed." (Tr. 23). Plaintiff contends that the ALJ's determination is error

because Dr. Renner was a treating source, as defined by 20 C.F.R. § 404.1502.

Before enactment of 20 C.F.R. § 404.1502, the Sixth Circuit defined the term "treating physicians as 'physicians who have seen plaintiff several times over a period of months.'" *Day v. Shalala*, 23 F.3d 1052, 1066 n 18 (6th Cir. 1994) (quoting *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983)). Social Security Regulations now define a treating physician as the physician who provides, or has provided, the claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502.

A claimant has "an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that" the claimant currently sees, or previously saw, "the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id*. A doctor treating or evaluating a claimant "only a few times or only after long intervals" may be considered a "treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)." *Id*. However, a doctor is not a treating source if the claimant's relationship with the source was based solely on claimant's "need to obtain a report in support of" claimant's disability claim. *Id*.

Plaintiff does not contest the ALJ's conclusion that she treated with Dr. Renner only three times over a seven month period. Instead, Plaintiff argues that Dr. Renner

should be considered a treating source because, despite only treating with Dr. Renner three times, she treated with Dr. Renner's medical practice group for over a year before Dr. Renner completed an RFC assessment.

Plaintiff cites no law in support of her position. In fact, one court has rejected a similar proposition, noting that a doctor who had never examined the claimant cannot be considered a treating physician simply because the doctor practices within the same practice group as claimant's actual treating doctor. *See Rice v. Astrue*, No. 07-39-P-S, 2007 WL 3023546, *3 (D.Me. Oct. 12, 2007) (reasoning that such doctor stands "in no better position than the state-agency reviewing physicians who had available to them the plaintiff's 'clinical file'").

While the facts in *Rice* are not completely analogous to the facts of this case, the reasoning in *Rice* is sound and consistent with the rationale behind the "treating physician rule." Treating physician opinions are generally accorded more weight because they are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[.]" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing 20 C.F.R. § 416.927(d)(2)); *see also Daniels v. Astrue*, 127 Soc.Sec.Rep.Serv. 1056, *4 (E.D. Ky 2008) (stating that "the treating physician doctrine is based on the assumption that a medical professional who has dealt with the claimant and his maladies over a long period

of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant only once"). Thus, in evaluating whether Dr. Renner is a treating physician, only Plaintiff's direct treatment with Dr. Renner is considered.

Here, contrary to *Rice*, Dr. Renner actually examined Plaintiff, and did so more than once. Even so, the Sixth Circuit has noted that "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 506-507 (6th Cir. 2006).

A review of Dr. Renner's records reveals that Plaintiff first saw Dr. Renner on August 11, 2006, at which time Plaintiff was continued on her medications. (Tr. 312). Plaintiff scheduled the August 11, 2006 session with Dr. Renner only after being told on August 10, 2006, via telephone, that her prescriptions would not be written unless seen by a registered nurse or Dr. Renner for pharmacy management. (Tr. 309).

Next, Dr. Renner saw Plaintiff on November 1, 2006. (Tr. 312). Dr. Renner's treatment notes from that visit indicate that Plaintiff had a job interview scheduled that same day, and that Plaintiff suspected her boyfriend was cheating on her after she was diagnosed with a sexually transmitted disease. (Tr. 312). The November treatment notes make no mention of Plaintiff's depression, anxiety or panic disorder other than a brief notation that Plaintiff was doing well on her medication. (Tr. 312).

Finally, on February 1, 2007, Plaintiff met with Dr. Renner for, as described by Dr. Renner, a "lawyer's disability assessment." (Tr. 314). Dr. Renner's treatment notes from that visit state that Plaintiff had not been seeing her therapist, Etta Treadway. (Tr. 314). Further, the notes indicate that Plaintiff was currently dealing with a diabetic mother and grandmother, and that Plaintiff failed to attend the funeral of a "dear friend . . . because she got the date mixed up." (Tr. 314). Dr. Renner notes that Plaintiff's stress resulting from these events caused a decrease in Plaintiff's appetite, which in turn caused Plaintiff to lose weight. (Tr. 314).

These treatment notes indicate fairly insignificant treatment of Plaintiff's allegedly disabling conditions by Dr. Renner before she completed the RFC questionnaire on February 1, 2007. As a result, it cannot be said that the ALJ erred in determining that Dr. Renner was not a treating physician. Accordingly, Plaintiff's assignment of error in this regard is without merit.

  2. *Basis of Dr. Renner's RFC Opinions*

Plaintiff also takes issue with the ALJ's conclusion that Dr. Renner's report was not supported by the records of Plaintiff's overall treatment. In light of Dr. Renner's fairly insignificant treatment notes regarding Plaintiff's depression, anxiety and panic disorder, substantial evidence supports the ALJ's conclusion that her treatment notes, alone, provide very little basis upon which a severe disability assessment could be based. Thus, the ALJ did not err in finding that Dr. Renner's notes failed to support her RFC

assessment. As a result, Plaintiff's assignment of error in this regard is without merit.

The ALJ also specifically found that Dr. Renner's RFC determination was not supported by Dr. Boxer's treatment notes. (Tr. 23). In his treatment notes on February 9, 2006, Dr. Boxer stated that Plaintiff "is not reporting any significant symptoms of anxiety or depression[,]" and that no such symptoms were evident upon his observation. (Tr. 298). Dr. Boxer further stated that Plaintiff was "doing very well on her current medicines and [was] not reporting any problems on them[.]" (Tr. 299). In fact, Plaintiff clearly went shopping before her appointment, as evidenced by several large shopping bags she brought with her. (Tr. 298). All of the above led Dr. Boxer to conclude that Plaintiff's condition was greatly improved and "essentially in remission." (Tr. 298-299).

Again, on March 8, 2006, Dr. Boxer's treatment notes state that he personally observed "no symptoms of depression or anxiety" and that Plaintiff reported "doing fine" with no "symptoms of depression or anxiety at this time." (Tr. 302). On Plaintiff's last visit with Dr. Boxer, on May 15, 2006, he noted "[n]o evidence of depression or anxiety" and that Plaintiff reported she was "doing satisfactorily." (Tr. 307).

Therefore, as found by the ALJ, nothing in either Dr. Renner's notes or Dr. Boxer's notes support Dr. Renner's RFC assessment. From the time Plaintiff began treatment with Dr. Boxer in February 2006, up until the time of Dr. Renner's RFC assessment in February 2007, nothing supports a conclusion that Plaintiff's mental condition was disabling.

Even before Plaintiff's treatment with Dr. Boxer and Dr. Renner, her medical records are replete with instances showing that her condition is well-treated when taking medication as prescribed. (Tr. 160, 159, 156, 154, 153, 152, 243, 278, 276, 274, 272, 298-299, 302, 307). Even Dr. Tepe reported that, between June 8, 2005 and July 8, 2005, Plaintiff was taking her medications and showed a clear improvement in her condition. (Tr. 272-275). As a result, substantial evidence supports the ALJ's conclusion that Dr. Renner's RFC assessment is not supported by Plaintiff's medical records.

Accordingly, Plaintiff's first assignment of error is without merit and is overruled.

### B. Second Assignment of Error

In her second assignment of error, Plaintiff argues that the ALJ erroneously determined that she was non-compliant with her treatment. Specifically, the ALJ stated that:

> Unfortunately, the claimant has a history of noncompliance with mental health treatment, even though she admits that with treatment she does quite well. The claimant also has a history of using alcohol to excess. The claimant's non-compliance and drinking are responsible for exacerbated symptoms. When the claimant follows a prescribed treatment regimen, her symptoms are well controlled.

(Tr. 20). Plaintiff contends such remarks are a misstatement of the record. However, as set forth below, the ALJ's findings in this regard are supported by substantial evidence.

On July 22, 2002, Plaintiff reported to Dr. Mital that she stopped taking Paxil because she was feeling so good that she believed she did not need the drug anymore.

(Tr. 159). However, Plaintiff also reported at that time that her anxiety started to return soon thereafter. (Tr. 159). Again, on January 20, 2004, Plaintiff reported to Dr. Mital that she quit taking her medication because she was doing well, yet started having panic attacks soon after stopping her medication. (Tr. 153).

On November 15, 2004, Plaintiff reported to Dr. Tepe that she suffered "many panic attacks in the last few weeks." (Tr. 237). However, she also reported taking some medication only in the morning and not at night "because she 'didn't need it at night,' and doesn't like being sedated." (Tr. 237). Dr. Tepe explained to Plaintiff that she needed to take her medication routinely, and further encouraged Plaintiff to comply with her treatment. (Tr. 237).

On August 15, 2005, after Plaintiff's condition had previously improved, Dr. Tepe states in his treatment notes that Plaintiff "looks and sounds more depressed." (Tr. 270). Dr. Tepe further notes that Plaintiff made "the point that she is not taking her medication correctly, and that when she was she was doing a lot better." (Tr. 270). Plaintiff also reported to Dr. Tepe during that she "can't let the Miller Lite alone" and had an incident while drinking wherein Plaintiff allegedly considered walking into the path of a semi-truck. (Tr. 270). The information gathered by Dr. Tepe led him to conclude that Plaintiff's drinking "is clearly out of control and she appears to have blackouts." (Tr. 270). Again, Dr. Tepe "made the point [to Plaintiff] that her medication needs to be routine[.]" (Tr. 270).

All of the above provides substantial evidence supporting the ALJ's conclusion that Plaintiff "has a history of noncompliance with mental health treatment" and that her "non-compliance and drinking are responsible for exacerbated symptoms." (Tr. 20).

Accordingly, finding no error with regard to Plaintiff's second assignment of error, it is overruled.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's assignments of error are without merit and are overruled. The ALJ's decision is supported by substantial evidence and should be affirmed. **IT IS THEREFORE RECOMMENDED THAT:** (1) because the decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, it should be **AFFIRMED**; and (2) as no further matters remain pending for the Court's review, this case should be **CLOSED.**


Date:  July 14, 2009                         s/ Timothy S. Black
                                             Timothy S. Black
                                             United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARY WALKER, | Case No. 1:08-cv-450 |
| Plaintiff, | Judge Herman J. Weber |
| | Magistrate Judge Timothy S. Black |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).