```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION
```

Mary Walker,                           : Case No. 1:08-cv-450
                                       :
    Plaintiff,                         :
                                       :
vs.                                    :
                                       :
Commissioner of Social Security,       :
                                       :
    Defendant.                         :

**ORDER**

Before the Court are Plaintiff's objections to the Report and Recommendation of the Magistrate Judge. In his Report, the Magistrate Judge recommends that this Court affirm the decision of the Commissioner denying Plaintiff's application for disability benefits. (Doc. 11)

**FACTUAL BACKGROUND**

Mary Walker applied for disability benefits in 2004, alleging an onset date of January 1, 2002. She claimed she was disabled by depression, anxiety and panic disorder. She started experiencing panic and anxiety sometime in 2002 and was followed by her primary care physician, who initially treated her with Paxil. In June 2002, Walker told her PCP that the medication "definitely controlled the anxiety." (TR 160) Walker became pregnant that fall and apparently discontinued Paxil until the spring of 2003. She reported to her PCP on May 27, 2003 that she had run out of Paxil, which made her condition worsen. (TR 157)

In September, she reported she was doing well on Paxil but quit taking it, and wanted something different to treat her depression. Her PCP started her on Wellbutrin. (TR 156) In November 2003, she reported that she quit taking Wellbutrin and did not know why. She admitted that she had been doing very well on Paxil and wanted to resume that medication. (TR 154) On January 20, 2004, she told her doctor that she was doing so well that she quit taking Paxil, and that panic attacks were resuming. Her doctor encouraged her to continue with Paxil at gradually increasing strength. (TR 153) On February 23, 2004, her PCP added Buspar because Walker complained about being anxious. (TR 151)

In 2004 Walker began seeing a psychiatrist, initially at Fairfield Counseling Center. On July 29, Walker was admitted for psychiatric inpatient care; the admitting note states that Walker was not able to get a timely appointment with her psychiatrist and had stopped taking Zoloft. (TR 216) Walker complained of panic and depression, and was started on a trial of Klonopin. She was referred to Dr. Tepe for followup, and saw him on August 18, 2004. Dr. Tepe noted that her symptoms fit classical panic disorder, and that she was not currently depressed. (TR 243) Walker reported doing well over the next several months, although she was subject to many external stresses, including her sister's cancer and witnessing a car hit her son. The child was not

seriously injured, but she complained of increased panic. She was not taking Klonopin at night, and Dr. Tepe instructed her on proper dosing.

On December 13, 2004, Tepe reported that Walker was increasingly upset because she had been denied Social Security benefits, and she described considerable anxiety. Walker told Tepe she had lost three jobs due to anxiety attacks, which would force her to leave her job or to be absent from work altogether. Tepe noted that treatment for her generalized anxiety would be longer-term, using psychotherapy and desensitization in addition to medication for panic disorder. Tepe states that he was not asked for an opinion on Walker's Social Security application, but he believed that her anxiety "fatally interferes with her wish and capability for work. I think this is real and that the patient is unable to work." (TR 235)

In February 2005, Walker complained of depression and was sleeping all the time. She had not seen her therapist as Tepe recommended because she said she did not have transportation. Tepe changed her medication to a different anti-depressant, concerned that Zoloft might have triggered some of her symptoms. (TR 280) Through the spring of 2005 Walker steadily improved, and Tepe added Buspar to treat her anxiety. On June 8, Tepe noted that Walker "looks pretty good," and that she did not cry during the session. He also noted that Walker did not respond to his

repeated comments about how much better she was doing, and that she did not want to acknowledge that fact. (TR 274) By August 15, however, Walker reported being more depressed. She admitted to Dr. Tepe that she was not taking her medication correctly, and she was drinking too much. She would not admit how much she was drinking, but said her father was an alcoholic. In October, Walker reported that she had resumed her medications and was much better. Dr. Tepe remained concerned about her alcohol abuse, noting that Walker was in denial about that. He also noted that Walker was "not at all interested" in a referral for alcohol abuse treatment. (TR 268)

On February 4, 2006, Walker visited the Forensic and Mental Health Services clinic. She told the intake social worker that Dr. Tepe terminated her from his practice for failing to keep appointments. Her primary care physician had given her medication renewals until she could be seen at the clinic. She described panic, anxiety and depression, but denied any alcohol abuse over the past twelve months. The intake evaluation concluded that Walker "is stable and her symptoms are not that distressing." (TR 293) At a medication management session on February 9, Walker again denied ever having a problem with alcohol, and stated that she was able to drive a car again. She had gone shopping before her appointment, and denied any current symptoms. (TR 298-299) Through the spring and summer of 2006,

Walker was doing well despite significant social stresses (a very poor housing situation, and a car theft).  (TR 300-309)

Walker met with Dr. Julie Renner of the Forensic Clinic on August 11 and November 1, as her prior psychiatrist left the clinic in late May.  Walker reported doing well on both occasions.  Renner saw Walker again on February 1, 2007 to complete a disability assessment at the request of Walker's lawyer.  Dr. Renner found Walker "unable to meet competitive standards" in her ability to complete a normal workday, and to deal with normal work stress.  In several others, Renner found serious limitations (including maintaining attention, sustaining an ordinary routine, or working in coordination with others).  Renner concluded that Walker would not be able to maintain work requirements without substantial support, and that she would expect Walker to be absent more than four days per month.  (TR 283-287)

Walker's initial application for benefits was denied, based in part on the state reviewer's clinical evaluation, and a state reviewer's RFC assessment.  Dr. Chiappone evaluated Walker in an October 29, 2004 visit.  Chiappone concluded that Walker was moderately impaired in her pace and persistence due to anxiety, and that she had moderately reduced stress tolerance.  He found mild impairments in concentration and attention, and in her ability to remember sequential tasks.  He assessed her global

functioning level to be 61, noting she was capable of doing basic tasks. (TR 245-248) Dr. Semmelman performed a psychiatric RFC assessment, based on a records review, on November 17, 2004. Dr. Semmelman found that Walker had medically determinable impairments of generalized anxiety disorder, panic disorder, and a personality disorder with obsessive-compulsive features. Walker's impairments caused moderate limits in social functioning, and in maintaining concentration, persistence or pace. She was moderately limited in her ability to complete a normal work day and week, in her ability to appropriately interact with the public, to accept instructions, and to get along with co-workers. While Semmelman found Walker's allegations largely credible, she concluded that Walker should be able to perform routine work tasks in an environment that does not involve strict time or production standards. (TR 249-265)

After reconsideration was denied, Walker requested a hearing de novo before an Administrative Law Judge. That hearing was held on May 4, 2007. Walker testified and she submitted the additional medical records from 2004-2007 summarized above. Dr. Stephanie Barnes, a vocational expert, testified that there were a substantial number of available jobs that Walker could perform within the restrictions articulated by the ALJ. (TR 383-387)

The ALJ concluded that Walker was not disabled. (TR 13-25) The ALJ performed the sequential analysis for disability, finding

that Walker has severe impairments of depression, anxiety/panic disorder, and borderline intellectual functioning.  Her impairments do not meet or equal the listings, however, and the ALJ considered her residual functional capacity.  He found that Walker had no exertional limitations, but could perform only simple, routine, repetitive tasks.  She can carry out only short and simple instructions, and cannot work at a rapid production-rate pace.  Any job should not require more than ordinary and routine changes in duties.  She cannot interact with the general public, and can interact with coworkers and supervisors only occasionally.  In light of some dizziness caused by her medications, Walker can never climb ladders/ropes/scaffolds, work at unprotected heights, or work around hazardous machinery.

In reaching these conclusions, the ALJ noted that Walker's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  He cited a repeated pattern of Walker's decision to stop taking her medications, even though she recognized that the medications helped her manage her symptoms.  The ALJ also recited Walker's treatment history with Dr. Tepe.  He noted Tepe's conclusion that Walker could not work (in December 2004), but also that with consistent treatment and medication, Walker had unquestionably improved by the following spring.  Dr. Tepe noted a reluctance on Walker's part to admit that she had improved, and Walker's

admission in August that she was drinking to excess was of concern. After Tepe confronted Walker in October 2005 about her denial of potential alcohol abuse (and her refusal to consider treatment for that), Walker failed to keep several appointments with Tepe, and he discharged her from his practice.

The ALJ also addressed Dr. Renner's RFC evaluation, but he discounted it. He first observed that Renner was not a "treating" physician, because she had seen Walker on only two occasions prior to completing the RFC. Walker's first visit with Renner on August 11, 2006 was made when the Clinic would not renew Walker's medications without a personal visit. Even if Renner is considered a treating physician, however, the ALJ found that Renner's clinical observations combined with those of Dr. Boxer, did not support the significant limitations Renner found to exist in her RFC assessment. The ALJ therefore gave more weight to the evaluation of Dr. Chiappone and Dr. Semmelman, concluding that the overall assessment from all of Walker's treating physicians indicate that Walker does quite well when she is fully compliant with her treatment. The ALJ was concerned about her denial of alcohol use, given Dr. Tepe's documented concerns and the history of Walker's treatment relationship.

Finally, the ALJ relied on the testimony of the vocational expert in finding that a significant number of jobs existed within Walker's RFC limitations, including janitor/cleaner

(687,000 national/11,000 region) or laundry worker (311,000 national/4,200 region).

The Appeals Council denied review, and Walker timely filed a complaint in this Court seeking judicial review.

## DISCUSSION

Standard of Review

Under 42 U.S.C. §405(g), this Court reviews the Commissioner's decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury. Id.

If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981). The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go

either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo the Magistrate Judge's recommendations regarding Social Security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

Plaintiff objects to the Magistrate Judge's conclusion that Dr. Renner was not a treating physician, for purposes of the Social Security regulations that generally accord significant, if not controlling, weight to treating physicians' opinions. The Magistrate Judge found that the ALJ did not err in concluding that Renner was not a treating physician. Renner saw Walker on August 11 and again on November 1, 2006; on both occasions, Renner continued Walker's medications. There is little or no noted observation of any active symptoms of panic disorder, anxiety or depression. On August 11, Walker related that her memory was not bothering her, and that all three of her children would be in school in the fall. On the November 1 visit, Walker reported she had a job interview scheduled that afternoon, and that she was doing well on her meds. Renner's third session with Walker on February 1, 2007 was primarily for the purposes of the

-10-

RFC assessment.

As the Magistrate Judge notes, the question of whether a doctor is considered a treating physician must depend on the circumstances of each case, and the nature of claimant's condition. The Magistrate Judge cites <u>Kornecky v. Comm'r of Soc. Sec.</u>, 167 Fed. Appx. 496, 506-507 (6th Cir. 2006), where the Sixth Circuit noted that "two or three visits often will not suffice for an ongoing treatment relationship." Plaintiff argues that Dr. Renner saw Walker on regularly-scheduled appointments every three months, consistent with her treatment plan. In between, Walker was counseling with a therapist, Etta Treadway. This is a common pattern in public mental health clinics, and cannot be compared to treatment by a private psychiatrist, who may see a patient weekly or biweekly. Plaintiff also notes that she was seen at the same clinic from February 6, 2006, first by Dr. Boxer and then by Dr. Renner. Taking this entire period of treatment, the clinic notes adequately demonstrate that Renner's opinion is entitled to controlling weight.

20 C.F.R. §404.1502 provides that a treating physician is one who has provided a claimant "with medical treatment or evaluation and who has, or has had an ongoing treatment relationship with" a claimant. In some cases, a few visits will suffice to establish that ongoing relationship; in others, particularly in cases such as this one involving psychiatric and

-11-

psychological impairments, more than a few visits are likely necessary to establish the ongoing nature of the relationship. Granting Plaintiff's contention that the normal regimen for treatment from Dr. Renner and the Forensic Clinic was at three-month intervals does not establish that Renner was a "treating" physician within the meaning of the regulation. This Court concludes that the Magistrate Judge correctly found that Dr. Renner is not a treating physician, and that the ALJ did not err in reaching that conclusion.

But even if Dr. Renner is considered a treating physician, the critical issue raised in Plaintiff's objections is whether the ALJ erred in failing to accord significant or controlling weight to Dr. Renner's RFC evaluation. The ALJ noted that even if Renner is considered a treating physician, her notes and those of Dr. Boxer simply did not support her drastic limitations on Walker's ability to function. Dr. Renner concluded that Walker would consistently miss more than four days of work per month; that she could not deal with work stress; and that she has bouts of intermittent, spontaneous crying. The treatment notes of both Dr. Boxer and Dr. Renner do not document any significant clinical findings that could support these limitations. To the contrary, Dr. Boxer consistently noted that Walker was doing very well on her medications, and her mental status examinations were unremarkable. Dr. Renner's first visit note indicates Walker

complained of some memory issues, and that "every now and then" she would cry.  Dr. Renner did not chart any particular symptoms or note any episodes of panic or anxiety.  On November 1, 2006, Dr. Renner noted no change in her appearance or symptoms, and that she was doing well on her medications.  (TR 312)  And on February 1, 2007, the notes indicate that Walker was under stress due to her mother and her grandmother being ill, but Dr. Renner did not indicate any problems with panic disorder, anxiety or depression, and continued Walker's medications.  (TR 314-315)

Plaintiff argues that Renner's restrictions are supported by the medical records of Plaintiff's other physicians, particularly Dr. Tepe's 2004 opinion that Plaintiff could not work, and Walker's July 2004 hospitalization for suicidal ideation.  As described above, however, after those dates Dr. Tepe changed Walker's medications, and by the summer she had greatly improved.  Similarly, after her July 2004 hospitalization when she was consistently following Dr. Tepe's treatment regimen, she improved, even when facing increased social and family stresses.

A treating physician's opinion is entitled to controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §404.1527(d)(2).  The ALJ need not accept a medical opinion that a claimant is "disabled" or unemployable, as

that determination rests with the Commissioner under 20 C.F.R. §404.1527(e)(1).  Based upon the evidence in the record, the Magistrate Judge correctly concluded that the ALJ did not err in giving only slight weight to Renner's RFC assessment. Substantial evidence in the record supports the ALJ's conclusion that when Plaintiff is adhering to her treatment plan and taking her medications, her condition is stable.

Finally, Plaintiff objects to the Magistrate Judge's conclusions with respect to her non-compliance with treatment. She also objects to any focus on one incident in August 2005, when she admitted to Dr. Tepe that she was drinking too much. She argues that one incident is not indicative of non-compliance with treatment recommendations, and that the ALJ improperly relied on that incident to question her credibility.  The ALJ questioned Walker about her medications during the hearing, and she testified that she tried to tell Dr. Renner that her meds made her too drowsy to stay awake.  (TR 370-371)  This testimony contradicts Dr. Boxer's notes from 2006 that Walker's medications were helping her, not bothering her.  There is nothing in the Clinic records documenting any complaint from Walker about her medications.  Walker also testified that she always took her prescribed medications after her July 2004 hospitalization.  Yet Dr. Tepe documented that in August 2005, Walker admitted to him that she was not taking her meds and that she was drinking.

-14-

Walker did not explain why she stopped going to Dr. Tepe and started at the Forensic Clinic. She now suggests that her missed appointments with Dr. Tepe simply confirm her inability to meet work obligations and deadlines. But there are no records from Tepe to document the reasons that Walker may have given for missing those appointments after October 2005. The Forensic Clinic records document several missed appointments (4/1/2006, 5/4/2006, 5/8/2006, and 8/10/2006), but in each case Walker called the Clinic to inform them she would miss the appointment and to re-schedule. These notes do not document any complaint Walker made that she was unable to keep appointments due to panic attacks or anxiety. Moreover, Walker admitted to Dr. Renner on February 1, 2007 (the date of the RFC) that she had not been seeing her therapist. The only documented reason is Walker's statement that "a lot has happened," referring to her mother's and her grandmother's illnesses. Walker testified at the hearing that she had not had an alcoholic drink for several years, and Walker reported to Dr. Boxer at her first visit that she never had a problem with alcohol. Given Dr. Tepe's documented concerns in this regard, the ALJ properly took these facts into account in evaluating Walker's complaints and her credibility.

As the fact-finder, the ALJ is the ultimate arbiter of a claimant's credibility, and must evaluate a claimant's descriptions of subjective complaints in the light of all the

-15-

medical evidence.  This Court does not resolve conflicts in the evidence, but simply determines whether the ALJ's conclusion is supported by substantial evidence.  The Magistrate Judge concluded that the medical documentation discussed provides substantial evidence supporting the ALJ's conclusions with respect to Walker's compliance with treatment regimens.  This Court finds that the record fully supports this conclusion, and that the ALJ did not err in his assessment of Walker's compliance and credibility.  Therefore Plaintiff's objections on this ground are overruled.

### CONCLUSION

For all of the foregoing reasons, this Court fully adopts the Report and Recommendation of the Magistrate Judge. Plaintiff's objections are overruled.  The decision of the Commissioner is therefore affirmed.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: September 23, 2009         s/Sandra S. Beckwith
                                  Sandra S. Beckwith
                                  Senior United States District Judge